# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

REGINALD BRUTON,

    Plaintiff,

v.                                                 Case No: 6:16-cv-1209-Orl-37DCI

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Reginald Burton (Claimant), appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying his application for a period of disability and disability insurance benefits. Doc. 1; R. 1-4. Claimant argues that the Administrative Law Judge (the ALJ) erred by: 1) failing to weigh, and to give appropriate weight to, Claimant's service-connected disability rating with the Department of Veteran's Affairs (VA); 2) failing to give appropriate weight to the opinions of Claimant's treating psychiatrist (Dr. Rene Poveda, M.D.) and nurse practitioner (Ms. Leah Marcovitz, ARNP); 3) failing to properly determine Claimant's residual functional capacity (RFC) in light of certain Social Security Rulings (SSRs) related to interaction with the public, co-workers, and supervisors; and 4) applying the incorrect legal standard in determining Claimant's credibility. Doc. 25 at 2. All of these are, at base, claims that the ALJ erred in her step-four determination of Claimant's RFC. Claimant argues that the Court should reverse the decision of the Commissioner and remand this matter for further proceedings. *Id.* at 1. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

**I.     STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**II.    ANALYSIS.**

All of Claimant's challenges – at core – relate to the ALJ's alleged failings in calculating Claimant's RFC at step four of the sequential evaluation process. At step four, the ALJ assesses a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining a claimant's RFC. 20 C.F.R.

§ 404.1546(c). The ALJ must consider all relevant evidence, including, but not limited to, the opinions of treating, examining, and non-examining medical sources, as well as the opinions of "other sources." *Id.* at § 404.1545(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

Here, the ALJ found that Claimant suffers from severe impairments of post-traumatic stress disorder (PTSD) and bilateral pes planus. R. 13. The ALJ also found that Claimant suffers from a non-severe impairment of mild obstructive sleep apnea. *Id.* The ALJ subsequently found that Claimant can perform light work as defined by 20 C.F.R. § 404.1567(b), [1] with the following additional comments and restrictions:

> Specifically, the evidence supports that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for 6 hours of an 8-hour workday and sit about 6 hours total during an 8-hour workday. Further, he is able to complete superficial transactions with co-workers but he works best in positions that requires [sic] only occasional close interactions with co-workers and supervisors, and no more than occasional interaction with the public.

R. 15.

**A. The VA Disability Rating**

Claimant's first assignment of error is that the ALJ erred by failing to weigh Claimant's VA service-connected disability rating and, specifically, by failing to give that disability rating

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

great weight. Doc. 25 at 2-4. The Commissioner asserts that the ALJ appropriately considered Claimant's VA disability rating. Doc. 26 at 4-5.

At step four, and ultimately in determining Claimant's RFC, the ALJ made the following statements concerning Claimant's VA disability rating:

> According to the VA. rating decision, dated December 9, 2010, the claimant was awarded VA benefits for PTSD (50%), increased to 70% as of March 9, 2013; tinnitus (10%), and hypertension (0%), and exercise-induced asthma (0%). He was later denied service connection disability with regards to bilateral pes planus and skin condition - and the sleep disorder was deferred (Exhibit 6D/pages 3-25). However, by August 28, 2014, the claimant's VA rating decision indicated that his percentage was increased to 80% overall due to exercise-induced asthma and sleeping disorders (Exhibit 7D/pages 1-8). The undersigned notes that the VA is a distinct agency that utilizes its own standards in evaluation [sic] veterans' claims. Their findings are not binding on Social Security determinations.

R. 17-18. Thus, while the ALJ acknowledged that Claimant had an 80% overall VA disability rating due to the impairments the ALJ deemed both severe and non-severe, the ALJ did not assign a weight to that VA disability rating. *Id.* To the contrary, it appears that the ALJ gave the VA disability rating no weight when she simply concluded by stating that: "The undersigned notes that the VA is a distinct agency that utilizes its own standards in evaluation [sic] veterans' claims. Their findings are not binding on Social Security determinations." *Id.* at 18.

When Claimant filed his application for benefits, the Social Security regulations provided as follows in relation to disability determinations from other government agencies:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.[2]  However, the Social Security Rulings (SSRs) provide that:

> [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental . . . agencies. Therefore, evidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered . . . .  [T]he adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases . . . .

SSR 06-3p.[3]  Thus, as a Court in this District recently stated, "SSR 06-3p requires the Commissioner to evaluate decisions by other governmental agencies and provides that the ALJ should explain the consideration given to those decisions." *Mallory v. Comm'r of Soc. Sec.*, No. 6:14-CV-1669-ORL-GJK, 2015 WL 8321898, at *3 (M.D. Fla. Dec. 9, 2015) (citing *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (Social Security Rulings are binding on the Commissioner) (unpublished)).[4]  The Court in *Mallory* went on to explain as follows:

> In *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981), the former Fifth Circuit held that while VA disability decisions are not binding on the Commissioner, they are "evidence that should be considered and [are] entitled to great weight." *Id.*  Since *Rodriguez*, the Eleventh Circuit has also held that "'[t]he findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight.'"  *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)).  The Eleventh Circuit has stated that the

---

[2] 20 C.F.R. § 404.1504 was amended in 2017.  The amended regulation applies to claims filed on or after March 27, 2017.  20 C.F.R. § 404.1504.

[3] The Social Security Administration (SSA) rescinded SSR 06-3p on March 27, 2017.  Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 27, 2017).  However, the rescission is only effective for claims filed on or after March 27, 2017.  *Id*.  Thus, SSR 06-3p applies to Claimant's claim.  *See id.*; *Morgan on Behalf of JC v. Berryhill*, 2017 WL 3476066, at *12 (E.D. La. June 30, 2017), *report and recommendation adopted*, 2017 WL 3456299 (E.D. La. Aug. 11, 2017); *Hall v. Berryhill*, 2017 WL 2805045, at *12 n.13 (D.S.C. June 13, 2017), *report and recommendation adopted*, 2017 WL 2797513 (D.S.C. June 28, 2017) ("The rescission is inapplicable to Plaintiff's claim because it applies only to claims filed after March 27, 2017.")

[4] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

> weight afforded to disability ratings from the VA may be implicit in the ALJ's decision. *See Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) (unpublished). **However, Courts within the Eleventh Circuit have routinely reversed where ALJs have failed to specifically identify VA disability ratings themselves, specify the weight given to them, or engage in a meaningful evaluation of them.** *See Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990) (reversing where ALJ rejected VA disability rating based solely on the differing criteria between agencies for determining disability); *Salamina v. Colvin*, No. 8:12-cv-1985-T-23TGW, 2013 WL 2352204, at *3-4 (M.D. Fla. May 29, 2013); Ray v. Astrue, No. 8:08-cv-335-DAB, 2009 WL 799448, at *6-7 (M.D. Fla. Mar. 24, 2009) (reversing, in part, where ALJ failed to discuss VA disability rating other than the plaintiff's testimony); *Rodems v. Colvin*, 2014 WL 795966, at *5 (N.D. Ala. Feb. 27, 2014) (reversing, in part, because the ALJ did not state what the disability ratings were or the weight accorded to them); *Rainwater v. Colvin*, 2013 WL 4763742, at *3-4 (M.D. Ga. Sept. 4, 2013) (ALJ failed to articulate adequate reasons for discounting VA decision because the only reason given was that the decision is not binding on the Commissioner).

2015 WL 8321898, at *3 (emphasis added).

Here, the ALJ discussed Claimant's VA disability rating, but failed to weigh that rating at all, and certainly did not assign that rating "great weight" or otherwise explain her reasons for not assigning great weight to that rating. As explained in *Mallory*, "VA disability determinations are entitled to great weight and the fact that the VA disability ratings are not binding on the ALJ is not good cause, in and of itself, to reject VA disability ratings." *Id*. This case is also very similar to another recent case in this District, in that an otherwise well-written and reasoned ALJ decision required reversal due to a perfunctory rejection of a partial VA disability rating:

> Here, the ALJ's failure to analyze the 70 percent rating warrants reversal and remand. Although an ALJ's finding concerning a VA disability rating may be implicit, and although the ALJ's decision here was well-reasoned and otherwise thorough, an implicit finding is not obvious given the absence of even passing mention of the rating. *Williams v. Barnhart*, 180 F. App'x 902, 902 (11th Cir. 2006) ("While we recognize that the ALJ's prior decision addressed at some length Williams's VA medical evidence, nonetheless, in its decision the ALJ should specifically also consider and address the

> VA's Rating Decision itself."). There may be reasons to reject the rating—and the Commissioner provides a few—but the Court is not at liberty to affirm for those reasons. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline … to affirm simply because some rationale might have supported the ALJ's conclusion.").

*Karpf v. Comm'r of Soc. Sec.*, No. 3:14-CV-1226-J-PDB, 2016 WL 922716, at *2 (M.D. Fla. Mar. 11, 2016).

Given the nature of the ALJ's discussion of Claimant's VA disability rating, the undersigned cannot tell what weight, if any, the ALJ gave to the 80% VA disability rating. While the ALJ discussed many of the VA records underlying the VA disability rating, the ALJ appeared to give the 80% VA disability rating no weight whatsoever, and gave no explanation for her apparent decision to reject the rating. Thus, the undersigned finds that the ALJ failed to comply with SSR 06-3p, and the final decision is not supported by substantial evidence. The ALJ's error requires remand pursuant to sentence four of 42 U.S.C. § 405(g). *See Ruiz v. Colvin*, No. 3:13-cv-1102-J-JRK, 2014 WL 4809526, *5-6 (M.D. Fla. Sept. 26, 2014) (remanding pursuant to sentence four of § 405(g)); *Hogard*, 733 F. Supp. at 1468-1469 ("perfunctory rejection of the VA disability rating as based on different criteria" warrants remand for application of the proper legal standard).

Accordingly, it is **RECOMMENDED** that the Court accept Claimant's first assignment of error, and reverse and remand the case for further proceedings.

Because the undersigned respectfully recommends that the Court reverse and remand the ALJ's decision for further proceedings, the Court may reverse and remand without considering Claimant's other assignments of error. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors). This would be particularly appropriate where, as here,

all of the assignments of error go to the determination of Claimant's RFC, which the ALJ must reassess based upon the entire record. However, because this is simply a recommendation, which may be rejected by the Court, the undersigned will consider the remaining assignments of error.

**B. The Opinions of the Treating Physician and Nurse Practitioner**

Claimant's second assignment of error is that the ALJ erred by assigning "little weight" to the opinions of Dr. Poveda and Ms. Marcovitz. Doc. 25 at 4-11. In particular, Claimant asserts that the ALJ erred by failing to follow the "Treating Physician Rule." *Id*. at 4. While not actually identifying the rule, as such, Claimant's basic argument is that the ALJ erred by giving Dr. Poveda's opinion little weight in reliance upon a non-examining source. *Id*. at 4-9. As to Ms. Marcovitz, Claimant asserts that the ALJ improperly rejected Ms. Marcovitz's opinion simply because Ms. Marcovitz was not an acceptable medical source. *Id*. at 9-11. The Commissioner argues that Claimant mischaracterizes the bases for the ALJ's decision to give the opinions at issue little weight, and that the ALJ properly considered and assigned little weight to the opinions of Dr. Poveda and Ms. Marcovitz. Doc. 26 at 5-10.

*1. <u>Dr. Poveda</u>*

The opinions of Dr. Poveda at issue are those contained within a July 23, 2014 assessment titled, Medical Assessment of Ability to do Work Related Activities (Mental) (hereafter, Dr. Poveda's Assessment), which contained functional limitations and a diagnosis of PTSD and anxiety. R. 20, 872-75. There is no dispute that Dr. Poveda is a treating physician. Doc. 26 at 7. In Dr. Poveda's Assessment, she opined that Claimant had poor or no ability to: "deal with public"; "deal with work stress"; and "understand, remember and carry out simple job descriptions." R. 872-73. Dr. Poveda's Assessment also included handwritten notes as follows: (1) "unable to handle stressful situations"; (2) "extreme anxiety, poor concentration, inability to handle stressful

situations"; and (3) "unable to perform any activities that may require [Claimant] to be expose to stressful situations or require criticism from supervisor or interact with the public." R. 872-74. However, Dr. Poveda's Assessment contained other, less limiting opinions, including determinations that Claimant had an unlimited or very good ability to: "follow work rules"; "use judgment"; "function independently"; and "maintain personal appearance." *Id*. Further, Dr. Poveda assessed many of Claimant's other abilities as good (such as "maintain attention/concentration" – apparently in conflict with her handwritten notes) and fair (such as his ability to "relate to co-workers" and "interact with supervisors" – apparently acknowledging that Claimant does have some ability to do those things in a work setting). *Id*.

When the ALJ considers medical opinions in assessing a claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process, the ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary

finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179.

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

Here, in reaching the RFC determination, the ALJ considered Claimant's testimony, objective medical evidence, and opinion evidence, including the opinions of Dr. Poveda and Ms. Marcovitz. R. 15-21. In particular, the ALJ assessed Dr. Poveda's opinions as follows:

> However, the undersigned accords little weight to the above opinion of Dr. Poveda because her findings are not consistent with the findings and observation contained in her own records, the GAF scores she assessed, other medical evidence, or claimant's own activities. Specifically, the above opinion is not "well supported" by medically acceptable clinical findings and lab diagnostic techniques (Social Security Ruling 96-2p).
>
> In fact, neither the claimant's mental condition nor the pes planus (flat feet) was disabling or chronic at any time during the appeals period. In fact, the Miami VA progress notes dated September 18, 2012, by Dr. Rene Poveda, reported that he was diagnosed with Post-traumatic stress disorder with a GAF score of 60 *(and other times in the 70s range)*. He responded in a positive manner to therapy and his medications. His mental status exams were within normal limits. He was calm, cooperative, and well groomed. He was also alert and oriented with good eye contact. His speech was clear and coherent; his thoughts were organized/goal directed. His judgment was good, and he denied having any hallucinations or suicidal ideations (Exhibit 1F/pages 19-21).

R. 20.

In Claimant's brief, the majority of his argument is that the ALJ erred by discounting Dr. Poveda's opinions through a reliance upon a non-examining source's opinion. Doc. 25 at 4-9. The

undersigned agrees with the Commissioner that Claimant's argument is a bit of a mischaracterization of the ALJ's decision. The ALJ gave Dr. Poveda's opinions little weight "because her findings are not consistent with [1] the findings and observation contained in her own records, [2] the GAF scores she assessed, [3] other medical evidence, or [4] claimant's own activities." R. 20. The ALJ then discussed examples of the foregoing – beginning one sentence "specifically" and the next paragraph "in fact." *Id*. Those examples included the ALJ's determinations that Dr. Poveda's opinions were "not 'well supported' by medically acceptable clinical findings and lab diagnostic techniques" and certain treatment notes from Dr. Poveda that showed GAF scores in the 60s and 70s and mental status exams within normal limits. *Id*. While the non-examining sources certainly factored into the ALJ's overall discussion and determination of Claimant's RFC – that opinion was given great weight – it is certainly not apparent from the ALJ's decision that the ALJ simply rejected a treating physician's opinion in favor of a non-examining source.

Thus, the undersigned finds that the ALJ stated good cause, and articulated her reasons, for giving Dr. Poveda's opinions little weight. In fact, it appears that the ALJ determined that each of the three reasons set forth in *Winschel* provided an independent basis for the ALJ to discount Dr. Poveda's opinions: 1) Dr. Poveda's opinions were not bolstered by the evidence; 2) the evidence supported a contrary finding; **and** 3) Dr. Poveda's opinions were conclusory or inconsistent with the her own medical records. *Winschel*, 631 F.3d at 1179 (the factors are stated in the disjunctive in the opinion). Indeed, even a cursory reading of Dr. Poveda's opinion itself reveals internal inconsistencies already discussed herein that (when viewed in light of her treatment notes, the Claimant's activities of daily living, and the non-examining source (i.e., other medical evidence)) would appropriately lead the ALJ to give those opinions by Dr. Poveda little weight. Finally, even

if the undersigned were inclined to make a different decision in weighing the evidence anew, the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips*, 357 F.3d at 1240 n.8 (quoting *Bloodsworth*, 703 F.2d at 1239).

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error as to Dr. Poveda's opinions.

### 2. *Ms. Marcovitz*

The opinions of Ms. Marcovitz at issue are those contained within a July 23, 2014 assessment titled, Physical Medical Source Statement (hereafter, Ms. Marcovitz's Assessment), which contained functional limitations and a diagnosis of "Htn, Ptsd, flat feet, restrictive lung disease htn, sleep apnea, gastritis." R. 19, 867-70. There is no dispute that Ms. Marcovitz is a "non-medical source" under the Social Security Regulations. Doc. 25 at 9-10. In Ms. Marcovitz's Assessment, she checked boxes and circled answers concerning physical functional limitations, including limitations that Claimant could walk three city blocks without rest or pain, could sit for one hour before needing to get up, and could stand for one hour before needing to sit down or walk around. R. 868-69. It is important to note that the foregoing limitations were notated with "per pt." next to the response, an indication to the undersigned that these were not actually opinions by Ms. Marcovitz, but instead responses provided directly by Claimant. *Id*. Other functional limitations did not include the notation "per pt." – such as how long Claimant could sit or stand within an eight-hour day (two hours in each instance). *Id*. Ms. Marcovitz also opined as to some limitations related to Claimant's mental health, including an opinion that zero percent of the time Claimant's symptoms would likely be severe enough to interfere with attention and concentration – indicating, in contradiction to Dr. Poveda's opinion, that Claimant had no functional limitations

in relation to his attention and concentration. R. 869. Ms. Marcovitz also noted that – "per pt." – Claimant was "incapable of even 'low stress' work." R. 869.

The ALJ, assigned Ms. Marcovitz's opinions little weight, explaining:

> The undersigned accords little weight to the above opinion of Ms. Marcovitz because her findings are not supported by the objective medical evidence. Specifically, the above opinion is not "well supported" by medically acceptable clinical findings and lab diagnostic techniques. Rather, her conclusions appeared to be based on the claimant's subjective complaints and not on objective medical findings (Social Security Ruling 96-2p). Finally, Ms. Marcovitz is a nurse practitioner and not a physician.

R. 20. Thus, the ALJ assigned Ms. Marcovitz's opinion little weight because: 1) the opinions were not supported by the objective medical evidence; 2) the opinions – to the extent they were opinions – appeared to be based on Claimant's subjective complaints; and 3) Ms. Marcovitz is not a medical doctor. *Id.* Claimant argues that the ALJ gave Ms. Marcovitz's opinions little weight simply because she is not a medical doctor (Doc. 25 at 9-11), but that is belied by the plain language of the ALJ's decision. R. 20.

At the time Claimant filed this action and at the time of the ALJ's decision, a nurse practitioner was not an acceptable medical source, and thus their opinions were generally not accorded any special deference.[5] *See* 20 C.F.R. § 404.1513(a) (2015); *Clerjeaux v. Colvin*, 2016 WL 7470008, at *2 (S.D. Fla. Aug. 8, 2016) ("Nurse practitioners are not 'acceptable medical sources' under the social security regulations. The regulations specifically list five categories of acceptable medical sources, none of which include nurse practitioners. 20 C.F.R. §

---

[5] The undersigned notes that the term "acceptable medical source" is now defined by 20 C.F.R. § 404.1502(a), which provides that a "Licensed Advanced Practice Registered Nurse . . ." is an "acceptable medical source" for "impairments within his or her licensed scope of practice." 20 C.F.R. § 404.1502(a)(7). However, section 404.1502(a)(7) applies only to claims filed on or after March 27, 2017. *Id.*

404.1513(a)(1)–(5)."); *see also Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (physical therapist's opinion is entitled to less weight than a physician's opinion) (per curiam) (citing *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998)). The ALJ, nevertheless, must consider the opinions of nurse practitioners. 20 C.F.R. § 404.1527(f); SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006).

The ALJ considered Ms. Marcovitz's opinions, which are not entitled to any special deference, and articulated three reasons for rejecting her opinions. R. 19-20; *see Freeman*, 220 F. App'x at 960. Contrary to Claimant's assertions (Doc. 25 at 9-11), the ALJ considered Ms. Marcovitz's opinions, weighed those opinions, and articulated the weight that he gave to those opinions. Thus, the undersigned is not precluded from conducting a meaningful review of the ALJ's determination to assign little weight to Ms. Marcovitz's opinions. The undersigned has considered each of the ALJ's reasons, and finds that each is supported by substantial evidence, as exemplified above.[6] For example, the ALJ explained that many of Ms. Marcovitz's opinions appeared to simply be a recitation of Claimant's subjective complaints. That explanation is supported by substantial evidence, including Ms. Marcovitz's notations that many of her opinions in her Assessment are "per pt.", which the undersigned interprets (as did the ALJ) as being a notation denoting that the limitations were based upon Claimant's self-reports. R. 19-20. Therefore, considering the source of the opinion and the reasons articulated by the ALJ, the undersigned finds that the ALJ's decision to assign Ms. Marcovitz's opinions little weight is supported by substantial evidence.

---

[6] The ALJ certainly could have cited to additional evidence that supported each reason for rejecting Ms. Marcovitz's opinions. The ALJ, however, is not required to render a perfect decision, but one that is capable of meaningful review and supported by substantial evidence. *See Harden v. Colvin*, Case No. 8:15-cv-755-T-30JBT, 2016 WL 551794, at *3-4 (M.D. Fla. Jan. 26, 2016) *report and recommendation adopted by*, 2016 WL 540670 (M.D. Fla. Feb. 11, 2016).

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error as to Ms. Marcovitz's opinions.

### C. The RFC Limitation Related to "Occasional" Interactions

The Claimant's next assignment of error is a claim that the ALJ erred by failing to properly determine Claimant's RFC in light of certain Social Security Rulings related to interactions with the public, co-workers, and supervisors. Doc. 25 at 2; 11. Specifically, Claimant asserts that the ALJ erred because SSR 85-15 and SSR 96-9p are inconsistent with the following limitation contained within the RFC: Claimant "is able to complete superficial transactions with co-workers but he works best in positions that requires only occasional close interactions with co-workers and supervisors, and no more than occasional interaction with the public." R. 15; Doc. 25 at 11-13.

Claimant's argument is entirely without merit because SSR 85-15 and SSR 96-9p do not apply to Claimant's case. As identified by the Commissioner,[7] SSR 85-15 provides a framework for evaluating solely non-exertional limitations in relation to the Medical-Vocational Guidelines. *See Williams v. Halter*, 135 F. Supp. 2d 1225, 1227 (M.D. Fla. 2001) ("SSR 85-15 does not apply when a claimant has both exertional and non-exertional impairments.") (citing *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir.1995), *cert. denied,* 517 U.S. 1122 (1996)). And SSR 96-9p applies only to an RFC that included less than a full range of sedentary work. *See Hart v. Colvin*, 2013 WL 4736841, at *15 (N.D. Fla. Aug. 30, 2013) ("By its title and stated purpose, therefore, SSR 96–9p applies to claimants with an RFC of less than the full range of sedentary work, not to claimants with an RFC to perform light work such as Plaintiff in the instant case.") (citation omitted).

---

[7] The undersigned notes that Claimant was given an opportunity to – and did – file a Reply to the Commissioner's memorandum. However, Claimant chose not to address this issue in his Reply. Doc. 31.

The ALJ found Claimant capable of light work and included both exertional and non-exertional limitations in the RFC. R. 15. Thus, the SSRs identified by Claimant do not apply here. Further, even if they did, Claimant ignores the actual language of the RFC. In the RFC, the ALJ's limitation related to "occasional" interactions is a statement that Claimant "*works best* in positions that requires only occasional close limitations with co-workers and supervisors, and no more than occasional interaction with the public." R. 15 (emphasis added). Claimant ignores the "works best" portion of the RFC, and focuses simply on an argument that Claimant was *limited only to occasional interactions*. In doing so, Claimant mischaracterizes the actual RFC. As it actually reads, the undersigned finds that the last sentence of the RFC is supported by substantial evidence, as articulated by the ALJ at step four. R. 15-21.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's third assignment of error.

**D. Credibility.**

In Claimant's final assignment of error, Claimant asserts that the ALJ erred in evaluating Claimant's credibility, summarizing that assignment of error as follows:

> The Administrative Law Judge made a non-harmless error by evaluating Plaintiff's credibility by way of Plaintiff's testimony regarding non-symptomatic and non-medical issues such as activities of daily living and absence of medical treatment and finding Plaintiff not credible using "boilerplate" language, which is in conflict and forbidden by new Social Security Ruling 16-3p wherein new Social Security Ruling 16-3p has eliminated the use of the term "credibility" and is to be applied retroactively to hearings held prior to March 28, 2016.

Doc. 25 at 13. Claimant is simply arguing that the ALJ erred by not applying SSR 16-3p to this case. [8] Doc. 25 at 18. More particularly, Claimant's assertion is that SSR 16-3p, made effective on March 28, 2016, "applies retroactively to hearings held prior to March 28, 2016." Doc. 25 at 13. Thus, Claimant requests that the Court remand this case so that the ALJ can evaluate Claimant's credibility in light of SSR 16-3p. Doc. 25 at 18.

As an initial matter, Claimant cites no controlling case for the proposition that this Court should remand an ALJ's decision for the purpose of applying SSR 16-3p retroactively. Doc. 25 at 13-18. Here, the ALJ issued her opinion on January 8, 2015, more than a year prior to the effective date of SSR 16-3p. To the extent that some district courts have reversed and remanded solely for the purpose of retroactive application of SSR 16-3p, the undersigned is not persuaded that remand for that purpose is required. *See, e.g., Mendenhall v. Colvin*, 2016 WL 4250214, at *5 (C.D. Ill. Aug. 10, 2016) ("Because [the ALJ's] decision was inconsistent with the policy interpretation contained in SSR 16-3p, the Court remands this case for reconsideration."). Instead, the undersigned is persuaded by the reasoning of other courts that have declined to apply SSRs retroactively:

> SSR 16-3p took effect on March 16, 2016, more than two years after the ALJ issued his decision on December 23, 2013, and therefore is not applicable to the ALJ's decision in this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect

---

[8] The undersigned does not interpret Claimant's assignment of error more broadly. Specifically, the undersigned does not consider Claimant's argument to be an assertion that the ALJ's decision was otherwise unsupported by substantial evidence or the result of the application of an erroneous legal standard. *See T.R.C. ex rel. Boyd v. Comm'r of Soc. Sec.*, 553 F. App'x 914, 919 (11th Cir. 2014) (finding claimant waived argument that she equaled a listed impairment because she failed to present any argument demonstrating that the ALJ erred in considering that listed impairment) (citing *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.")).

> unless their language requires this result."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007) ("We are not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in federal courts, absent, of course, ex post facto or due process concerns not present here."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations." (citing 42 U.S.C. § 405(a))). The text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively.

*Murphy v. Comm'r of Soc. Sec.*, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016*); see also, e.g.*, *Sullivan v. Colvin*, 2017 WL 473925, at *3 n.11 (W.D. Va. Feb. 3, 2017) (noting the similarity between new SSR 16-3p and the superseded SSR 96-7p, but applying the SSR in effect at the time of the decision and citing authority for the proposition that the SSA "does not have the power to engage in retroactive rulemaking"). Thus, the undersigned finds that remand solely for the purpose of requiring the ALJ to reexamine Claimant's credibility under the framework of SSR 16-3p is not legally required.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's fourth assignment of error. However, because it is recommended that the Court reverse and remand the ALJ's decision in light of the first assignment of error, and because such remand will necessarily require the ALJ to again determine the RFC and, in doing so, consider what was once deemed Claimant's "credibility" (SSR 97-7p) and is now termed the "consistency" of Claimant's subjective complaints (SSR 16-3p), the undersigned recommends that, on remand, the Court direct the ALJ to do so using the guidance contained within SSR 16-3p. *See Diorio*, 721 F.2d at 729 (on remand the ALJ must reassess the entire record).

### III. CONCLUSION.

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **REVERSE** and **REMAND** the final decision of the Commissioner; and

2. Direct the Clerk to enter judgment in favor of the Claimant and against the Commissioner, and close the case.[9]

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 25, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[9] Although there is some indication in the introduction and the conclusion of Claimant's brief that he is requesting that the Court reverse and award benefits, Claimant has made no argument and cited no legal authority supporting that requested relief, and the undersigned finds that Claimant has waived such a request.  Further, even if Claimant can be deemed to have made such a request for relief, the undersigned finds that a reversal and award for benefits is not appropriate or justified in this case because the undersigned finds no injustice has occurred and because the cumulative effect of the evidence does not establish disability beyond a doubt.  *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).